FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

LAWRENCE L. TONG #3040
Assistant United States Attorney

BENJAMIN E. DOSKOCIL
Special Assistant United States Attorney
Room 6-100, PJKK  Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958

Attorneys for the Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICTCOURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHAEL H. RICHARDS, | ) | Cv. No. 14-00235 SOM-RLP |
| | ) | |
| Movant, | ) | Memorandum in Opposition to |
| | ) | Respondent's Motion to Quash |
| v. | ) | Subpoena Under Right to Financial |
| | ) | Privacy Act; Declaration of NCIS |
| DEPARTMENT OF DEFENSE, | ) | Special Agent Brian Bozin; |
| | ) | Certificate of Service |
| Respondent. | ) | |

## MEMORANDUM IN OPPOSITION TO MOTION TO QUASH
## SUBPOENA UNDER RIGHT TO FINANCIAL PRIVACY ACT

The United States of America, Department of Defense (Respondent), respectfully requests that this Court deny Movant Michael H. Richards's motion to quash or enjoin enforcement of subpoena.[1]  Movant's motion to quash should be denied, and this action should be dismissed, because Movant has not met the requirements set forth in 12 U.S.C. § 3410(a), Right to Financial Privacy Act (RFPA). The information sought by Respondent is also relevant to Respondent's legitimate law enforcement investigation of Movant.  See attached Declaration of Brian Bozin; and 12 U.S.C. § 3410(a)(2).

Pursuant to 12 U.S.C. § 3410(b) and to avoid undue delay in the on-going criminal investigation, the motion is appropriately decided on the pleadings without oral argument, unless the court is unable to determine the motion based on the pleadings, in which case "the court may conduct such additional proceedings as it deems appropriate.  All such proceedings shall be completed and the motion or application decided within seven calendar days of the filing of the Government's response."[2] 12 U.S.C. § 3410(b).   Section 3410 "is drafted in a fashion that minimizes the risk that customers' objections to subpoenas will delay or frustrate agency investigations." *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745 (1984). For that reason, "a court presented with such a challenge is required to rule upon it

---

[1] Under 12 U.S.C. § 3410, Right to Financial Privacy Act, Movant's motion is treated as a motion to quash or application to enjoin Respondent's subpoena.

[2] It should be noted that the Court must *first* "find that the customer has complied with subsection  (a) of [§ 3410]," before the Court can order the government to file a response. 12 U.S.C. § 3410(b); *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board*, 878 F.2d 875, 877 (5th Cir. 1989). To expedite the resolution of this matter and the Respondent's investigation, Respondent files this opposition despite Petitioner's non-compliance with 12 U.S.C. § 3410.

within seven days of the Government's response, § 3410(b)." Id. at 746.

## I.     <u>BACKGROUND</u>

Movant is a Master Chief Petty Officer, the highest enlisted rank in the U.S. Navy, serves in the U.S. Navy Reserve (USNR), and is under investigation for possible violations of the following criminal statutes: 18 U.S.C. § 371, Conspiracy to Defraud the United States; 18 U.S.C. § 641, Embezzlement and Theft of Public Money, Property or Records; and the Uniform Code of Military Justice (UCMJ), Article 107, False Statements, Article 121, Larceny and Wrongful Appropriation, and Article 132, Fraud Against the United States.  (Bozin declaration, ¶ 2).

On April 12, 2014, Respondent notified Movant that it intended to serve a subpoena on  Navy Federal Credit Union (NFCU), located in Vienna, Virginia, in order to obtain financial records relevant to Respondent's criminal investigation for the time frame at issue (Bozin declaration, ¶ 6). Movant filed this action on April 24, 2014 to prevent Respondent from obtaining his financial records from NFCU. The following is the only justification Movant cites for denying Respondent access to his financial records:

> The financial records sought by the Department of Defense are not relevant to the legitimate law enforcement inquiry stated in the Customer Notice that was sent/served to me and should not be disclosed, as the period requested is outside of the scope of dates of Active Duty whereby I am alleged to have fraudulently claimed and received [what I believe to have been authorized] Basic Allowance for Housing at the Dependant [sic] Rate.  The records prior to my service and after my release from active duty bare [sic] no relevance or

legitimate legal basis to the government's request or claim.

As discussed below, the financial information sought by Respondent is relevant to its criminal investigation of Movant. Accordingly, Movant's motion to quash should be denied.

## II.   <u>FACTS</u>

The Naval Criminal Investigative Service (NCIS) is conducting an investigation into allegations of fraud and theft of government money by Master Chief Petty Officer (MCPO) Michael H. Richards, USNR.  MCPO Richards was called to active duty several times during his career, and each time, he was entitled to additional pay and allowances if he had a dependent who relied on him for financial support.  By submitting an official Department of Defense form to the finance office in December 2006, MCPO Richards claimed that Peter Austin Wesley Varto was his dependent son and that he was entitled to the Basic Allowance for Housing (BAH) at the With Dependents rate, which is higher than the Without Dependents rate.  MCPO Richards received additional pay and allowances of approximately $33,590.50 from approximately December 2006 through September 2011, based on his representation that Master Varto was his dependent "son."  During a routine audit of government financial records and claims, the legitimacy of his claim was called into question when it was noted Master Varto resides in Pittsburgh, Pennsylvania and MCPO Richards resides in Hawaii.  It was further discovered that MCPO Richards never registered Master

Varto into the Defense Enrollment Eligibility Reporting System (DEERS), which would enable Master Varto to receive medical benefits, to which he was entitled if he was a military dependent.  MCPO Richards did not produce any documentation verifying that Master Varto was his dependent.

During an administrative investigation of MCPO Richards' conduct initiated by his command in February 2011, LCDR Kyle Vernon, emailed MCPO Richards and requested documentation to substantiate the dependency status of his dependent son.  In the course of several email exchanges between he LCDR Vernon, MCPO Richard stated "I am still Peter's legal guardian and I provide his financial support." Although he conceded that his name was not on Master Varto's birth certificate, he indicated that he believed he had previously provided proper dependent status paperwork in the form of a notarized statement affirming he was acting "in loco parentis" for Master Varto.  (Bozin declaration, ¶ 4).

Normally a birth or adoption certificate listing the military member as a parent is sufficient to substantiate the dependent status of the child, but when the legitimacy of the relationship of a claimed dependent is questionable, the Joint Federal Travel Regulations requires proof of adequate financial support.  Joint Federal Travel Regulations, Vol. 1, Ch. 10, paragraphs U10118, U10106 (2012, Change 309).  An investigation to find proof of adequate support revealed that there is substantial reason to believe that MCPO Richards's claim is fraudulent.  The investigation reveals that: (1) MCPO Richards was unable or unwilling to provide any

5

supporting documentation for the claimed dependency of Master Varto; (2) Master Varto's birth certificate obtained through the Pennsylvania Department of Health Division of Vital Records lists Amber Melontree (MCPO Richards's daughter) as his father, and does not list the child's father; (3) Melontree would not verify that MCPO Richards provides any financial support to her son; (4) and Master Varto was not identified as a dependent in the Defense Enrollment Eligibility Reporting System (DEERS), which establishes the Tricare medical benefits for which military dependents are eligible.  (Bozin declaration, ¶ 4). Based on a review of MCPO Richards's personnel file, it also appears that Melontree is Richards's daughter, and Master Varto thus is his grandson.  Under military regulations, the grandson of a military member is not considered a "dependent" for BAH purposes unless the member provides a document showing the member is the child's legal parent, and the member continues to provides financial support to that person.  The investigation in this case thus includes an inquiry into whether Richards provides financial support for Master Varto.

### III. <u>ARGUMENT</u>

### A.  <u>Movant Has Not Satisfied 12 U.S.C. § 3410(a)</u>

The Inspector General Act of 1978, as amended, mandates the Office of the Inspector General for the Department of Defense investigate fraud, waste, and abuse within the Department, authorizing the use of subpoenas for the production of all information and "documentary evidence necessary in the performance of the functions

assigned by this Act." 5 U.S.C. app. 3 §§ 4(a)(1), 8(c)(4), and 6(a)(4) (2013).  The

Defense Department criminal investigators have not only a right, but also an obligation

to investigate fraud of government funds by military members.  The inquiry in this

case is lawful because the investigation into MCPO Richards' housing allowance

claims fall squarely with the purview of the Naval and Defense Department's criminal

investigators, based on the provision above.

In *U.S. v. Miller*, 425 U.S. 435, 442-443 (1976), the U.S. Supreme Court

stated that a bank customer had no legitimate expectation of privacy in his bank

records. "In response to *Miller*, Congress enacted the RFPA, a limited means by

which bank customers can shield their financial records from government scrutiny."

*Sandsend Financial Consultants*, 878 F.2d at 875, 876 (5th Cir. 1989).   The

"challenge procedures" set forth in 12 U.S.C. § 3410 "constitute the sole judicial

remedy available to a customer to oppose disclosure of financial records." 12 U.S.C.

§ 3410(e); Sandsend Financial Consultants, Ltd., 878 F.2d at 877.  Title 12 U.S.C. §

3410(a) allows a financial institution "customer" to file a motion to quash an

administrative subpoena seeking the customer's financial records or to file

an application to enjoin a government authority from obtaining the same.

In order to successfully challenge a subpoena, the motion or application

*shall* contain an affidavit or sworn statement:

> (1)stating that the applicant is a customer of the financial institution
> from which financial records pertaining to him have been sought; and
> (2) ***stating the applicant's reasons for believing that the financial
> records sought are not relevant*** to the legitimate law enforcement

inquiry stated by the Government authority in its notice, or that there has not been substantial compliance with the provisions of this chapter.  12 U.S.C. § 3410(a) (emphasis added).

In reviewing a challenge to a subpoena under the RFPA, the court's role is "extremely limited."  *In re McVane et al v. FDIC*, 44 F.3d 1127, 1135 (2d Cir. 1995) (citing *NLRB v. C.C.C. Assoc., Inc.*, 306 F.2d 534, 538 (2d Cir. 1962)); *see also Sandsend Financial Consultants, Ltd.,* 878 F.2d at 879.  Courts within this Circuit have recognized the narrow constrains in these cases, and have determined that "[w]ithin the framework of the RFPA, only three questions are relevant: (1) Is there a legitimate law enforcement inquiry; (2) are the subpoenaed bank records relevant to the inquiry; and (3) has the government agency complied with the requirements of the RFPA?"  *In re Blunden*, 896 F. Supp. 996, 999 (C.D. Cal. 1995).  It is undisputed that Respondent substantially complied with the RFPA and that there is a legitimate law enforcement inquiry.[3]  Accordingly, the only issue is whether the information requested by Respondent is reasonably relevant to its investigation.

### (1) The Information Sought By Respondent Is Relevant To The Government's Investigation

The motion to quash should be denied because Movant's bank records are relevant to the subject of the ongoing investigation and Movant did not provide any legitimate reasons why his bank records are irrelevant to Respondent's

---

[3] Movant stated in his sworn statement filed with the Court that the financial records sought "are not relevant to *the legitimate law enforcement inquiry* stated in the Customer Notice." (emphasis added)   He proceeded to claim that the time period of the records sought is outside the scope of the investigation and, therefore, not relevant, but he made no assertions that the law enforcement inquiry itself is not legitimate.

investigation. 12 U.S.C. § 3410(a).   "The ultimate burden of showing that the records sought are relevant to a legitimate law enforcement inquiry is on the government."   *In re Blunden*, 896 F. Supp. At 999.   Courts in this Circuit have recognized the low threshold required in an administrative subpoena motion to quash, holding "[f]or the purposes of an administrative subpoena, the notion of relevancy is a broad one . . . . So long as the material (sought by the subpoena) *touches on a matter under investigation*, an administrative subpoena will survive a challenge that the material is not relevant."   *Barnett v. S.E.C.,* 2012 U.S. Dist. LEXIS 28845 (C.D. Cal. 2012) *5 (citing *Sandsend Fin. Consultants,* 878 F.2d 875)(emphasis added).   See also *In re Blunden*, 896 F. Supp. At 999:   "So long as the material 'touches a matter under investigation,' an administrative subpoena will survive a challenge that the material is not relevant." (citations omitted.)   Collins, 737 F. Supp. At 1479 (quoting Sandsend Financial Consultants, Ltd. v. Federal Home Bank Bd., 878 F.2d 875, 882 (5th Cir. 1989)).

Movant states that his bank records during the time for which he was not on active duty are not relevant.   If Movant fraudulently obtained funds for time spent on active duty for the time frame of 2006 through 2011, investigation of receipt and use of those funds is not limited to his active duty time. Respondent's investigation reveals that MCPO Richard's claim of Master Varto as a dependent is suspect.   Information developed in the investigation indicates that MCPO Richards may have submitted false claims in a scheme to defraud the

government and steal tens of thousands of dollars.  He may also have made false statements during the course of his email discussions with LCDR Kyle Vernon. Respondent's investigation revealed that MCPO Richards has a bank account with NFCR, into which the housing allowances at the elevated With Dependents rate has been paid from 2006 to 2011 and from which MCPO Richards would have supported Master Varto, if support was paid.  The records sought in the subpoena are relevant to this investigation because the bank records will help determine whether MCPO Richards received the housing allowances and whether he paid any financial support for Master Varto since 2006, as he claimed.  The records could be the proof of adequate financial support required by the Joint Federal Travel Regulation.  On the other hand, the records may show a complete absence of any financial support paid to Master Varto.

Additionally, from MCPO Richard's statements via email (Bozin declaration, ¶ 4), he appears to be claiming he was acting without knowledge or intent to steal when he certified the dependent status of his grandson.  He intimates that he thought he was providing the correct required paperwork.  Because the theft statutes listed above will require the government to prove MCPO Richards acted with knowledge and intent when he devised the scheme to take money he was not entitled to, his financial records will be important to either verify the financial support MCPO Richards claims to have provided, or conversely, show that his records indicate he has not been supporting his grandson.  If MCPO Richards has

not been supporting his grandson financially, such evidence will serve to refute his lack of knowledge and intent.  The records will further provide information about whether the statements MCPO Richards made in his emails to LCDR Vernon were false, and thus might support violations of Article 107 of the UCMJ.

Master Varto was born in 1999 in Allegheny, Pennsylvania.  (Bozin declaration, ¶ 4.E.)  If he was MCPO Richards' dependent, the bank account records from June 1999 should indicate some measure of financial support by MCPO Richards.  Respondent requests records only from 2006, the period under investigation.  The bank statements would likely show some financial support provided directly to Master Varto or some notable change in expenditures or allotments that could support the claim that MCPO Richards recently acquired a seven-year-old child dependent.  The records beyond 2011 are requested to further determine support of the child, whether Movant intended to permanently deprive the government of the funds, and where the funds were used for asset forfeiture and recovery purposes, should that become appropriate.  The records are also relevant to the investigation because the bank records may assist in accounting for the precise amount of money MCPO Richards received from the government housing allowance and whether a portion of it was justified by showing:

      (1) the amount, nature, and frequency of any support Movant paid in support of Master Varto;

      (2) the timing of any such support Movant may have paid for

Master Varto, including whether any support began prior to Movant claiming Master Varto as a dependent and whether it continued for the entire five years Movant was paid the elevated allowance;

(3) whether Movant actually received the BAH With Dependents rate; and

(4) Movant's use of the money received to support or refute that he intended to permanently deprive the government of those funds and to track the use of those funds for asset forfeiture action, should that become appropriate.

(Bozin declaration, ¶ 7).

Showing actual relevance is unnecessary because only a "reasonable belief that the records sought are relevant" is required. 12 U.S.C. § 3410(c). Here, Respondent has demonstrated a reasonable belief that the records are relevant to its investigation. This case is in the investigative stage, and the ongoing investigation reveals substantial information that Master Chief Petty Officer Richards has violated the law by fraudulently obtaining funds. In order for the investigation to proceed, Movant's bank records are required. The bank records are relevant to aid in determining whether MCPO Richards violated the law or whether there is proof of adequate financial support for the dependent that he claimed for years.

Accordingly, "If the court finds . . . that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, it shall deny the motion or

application." 12 U.S.C. § 3410(c).

## IV.  CONCLUSION

Based on the foregoing, the court should deny the motion to quash or enjoin enforcement of the Department of Defense, Office of the Inspector General subpoena directed to Navy Federal Credit Union.

Dated:  May 23, 2014, at Honolulu, Hawaii.

Respectfully submitted,

FLORENCE T. NAKAKUNI
United States Attorney
District of Hawaii

/s/ Benjamin E. Doskocil
By_____
  BENJAMIN E. DOSKOCIL
  Special Assistant U.S. Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

13

## CERTIFICATE OF SERVICE

I hereby certify that, on the dates and by the methods of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served by Electronic-mail and first-class mail:

Michael H. Richards                    Mikehw@aol.com
590 Farrington Hwy, 524-107
Kapolei, HI 96707

DATED: May 23, 2014, at Honolulu, Hawaii.

/s/ Benjamin E. Doskocil
_____
U.S. Attorney's Office
District of Hawaii